UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:08-CR-5-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| BRANDON LEE MCMILLIAN | ) | |

On even date herewith, the court concluded defendant's sentencing hearing and orally pronounced defendant's sentence. This memorandum serves to memorialize the court's application of the second degree murder cross reference in the calculation of defendant's guideline range and its rulings on the parties' objections to the presentence report.

By way of brief background, defendant pled guilty on 6 May 2008 to two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g) and 924. In the presentence report, the Probation Office calculated defendant's guideline range by applying the cross reference in U.S.S.G. § 2K2.1(c)(1)[1] and in turn applying the second degree murder guideline in U.S.S.G. § 2A1.2, resulting in a base offense level of 38. With an adjustment for acceptance of responsibility, the total offense level is 35, and defendant's guideline imprisonment range, with a criminal history category of IV, is 235-293 months. However, the range is limited by the statutory maximum term of imprisonment, that is, 120

---

[1] That cross reference provides in relevant part:
> If the defendant used or possessed any firearm . . . in connection with the commission or attempted commission of another offense, . . . apply—
> . . .
> (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K2.1(c)(1).

months per count. 18 U.S.C. § 924(a)(2). Because defendant is being sentenced on multiple counts, under U.S.S.G. § 5G1.2(d),

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

Accordingly, the total imprisonment range on both counts is 235 to 240 months.

On 3 November 2008, the court began defendant's sentencing hearing. On that date, the parties offered live testimony and documentary evidence, and the court heard the parties' oral arguments. The court continued the hearing to the instant date in order to consider the evidence and argument.

Defendant initially raises a legal argument against application of the cross reference. (Def.'s Mem. Supp. Obj. PSR at 3-4.) Defendant contends that such application would violate due process and federalism principles. However, as defendant concedes, the Fourth Circuit Court of Appeals has rejected this argument, see United States v. Carroll, 3 F.3d 98, 101-02, 103 (4th Cir. 1993) (per curiam) (holding application of cross reference in U.S.S.G. § 2K2.1(c) does not federalize a state crime), and this court is bound to follow that decision.

Defendant next contends that if the cross reference to the murder guideline is not unconstitutional, then the government must prove beyond a reasonable doubt all facts essential to the cross reference. (Def.'s Mem. Supp. Obj. PSR at 4-6.) Defendant argues this standard of proof is warranted because application of the cross reference increases defendant's guideline range by more than 400 percent and therefore implicates due process concerns. It is true that in McMillan v. Pennsylvania, 477 U.S. 79, 87-88 (1986), the Supreme Court suggested a higher

2

standard of proof should apply where the finding of certain facts would greatly enhance a defendant's sentence. Also, relying on subsequent Supreme Court precedent, the Fourth Circuit Court of Appeals has recognized that "[p]roof by a preponderance of evidence is sufficient as long as the enhancement is not 'a tail which wags the dog of the substantive offense.'" United States v. Montgomery, 262 F.3d 233, 249 (4th Cir. 2001) (quoting United States v. Watts, 519 U.S. 148, 156 n.2 (1997) (quoting McMillan)); see also United States v. Hammoud, 381 F.3d 316, 354-55 (4th Cir. 2004) ("While this court has taken the language of *McMillan* as an indication that the Due Process Clause imposes some limitations on the use of sentencing factors proven only by a preponderance of the evidence, we have never defined those limits and have never declared a sentence invalid on the basis that a sentencing factor was established by an inadequate standard of proof." (citations omitted)), vacated, 543 U.S. 1097 (2005).

However, since the Court's decision in United States v. Booker, 543 U.S. 220 (2005), a majority of circuit courts to reach the issue have concluded that the "tail wagging the dog" concern expressed in McMillan is no longer real, and a court's determination of sentencing factors based on a preponderance of the evidence does not violate due process. See United States v. Fisher, 502 F.3d 293, 306-308 (3rd Cir. 2007); United States v. Brika, 487 F.3d 450, 461-62 (6th Cir. 2007); United States v. Reuter, 463 F.3d 792, 793 (7th Cir. 2006); but see United States v. Staten, 466 F.3d 708, 718 (9th Cir. 2006) ("We agree with the suggestion in our post-*Booker* cases and with the government's position in this case that the clear and convincing standard still pertains post-*Booker* for an enhancement applied by the district court that has an extremely disproportionate effect on the sentence imposed."). As the Seventh Circuit explains:

> With the guidelines no longer binding the sentencing judge
> [by virtue of Booker], there is no need for courts of appeals to add

> epicycles to an already complex set of (merely) advisory
> guidelines by multiplying standards of proof. The judge is cabined,
> but also liberated, by the statutory sentencing factors. 18 U.S.C. §
> 3553(a). Unlike the guidelines, they bind, but they are broad
> enough and loose enough to allow the judge to dip below the
> guidelines range if he is justifiably reluctant to impose a sentence
> most of which rests entirely on a finding of fact supported by a
> mere preponderance of the evidence . . . . Section 3553(a)(2)(A)
> includes among the factors to be considered in sentencing "the
> need for the sentence imposed . . . to reflect the seriousness of the
> offense, to promote respect for the law, and to provide just
> punishment for the offense." A judge might reasonably conclude
> that a sentence based almost entirely on evidence that satisfied
> only the normal civil standard of proof would be unlikely to
> promote respect for the law or provide just punishment for the
> offense of conviction.

Reuter, 463 F.3d at 793 (some citations omitted). This court will follow the majority and apply

the preponderance of the evidence standard, as it does with all fact finding relative to calculating

the guideline range, see United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005).

Federal law

> defines murder as "the unlawful killing of a human being with
> malice aforethought." 18 U.S.C. § 1111. It further provides, in
> relevant part:
>> Every murder perpetrated by poison, lying in wait,
>> or any other kind of willful, deliberate, malicious,
>> and premeditated killing; or committed in the
>> perpetration of, or attempt to perpetrate, any . . .
>> robbery . . ., is murder in the first degree.
>> Any other murder is murder in the second degree.
>
> *Id.* Under this provision, there are three types of murder relevant to
> this case. One is first-degree premeditated murder, which requires
> a showing of premeditation in addition to proof of malice. *See id.*
> Another is felony murder, or a killing "committed in the
> perpetration of" robbery or one of the other listed felonies, where
> there is no requirement that the government prove premeditation to
> commit murder. *See id.* Finally, there is second-degree murder,
> which requires only a showing of malice. *See id.* . . .
>> Each of these types of murder requires a showing of malice
> aforethought. . . . To prove malice, the Government does not have

4

> to show an intent to kill or injure. Rather, malice aforethought "may be established by evidence of conduct which is 'reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'"

United States v. Williams, 342 F.3d 350, 356 (4th Cir. 2003) (some citations omitted).

There is ample evidence from which to conclude by a preponderance of the evidence, or even by clear and convincing evidence, that defendant possessed a firearm on 27 December 2004 in connection with the commission of second degree murder and did not act in self-defense. The court makes the following findings of fact.

Prior to 27 December 2004, Derrick Taylor and Matthew Hardin had exchanged numerous phone calls, centering on a dispute about Rhonda Locklear, Taylor's then-girlfriend. Defendant, who was a friend of Hardin, also became involved in the dispute and exchanged telephone calls with Taylor. On 27 December 2004, Taylor and Hardin, by telephone, decided to meet at a convenience store in Red Springs, North Carolina to fist fight. Taylor asked his father, Stephen Taylor, to accompany him to the store and told him the purpose was to engage in a fist fight. Stephen Taylor drove his friend, Marcus Bell, and his son, Derrick, to the store in Bell's car. Stephen Taylor parked the car in the rear of the store's parking lot. Derrick Taylor removed his shirt and necklace in preparation for the fight. The three men stood around Bell's car, with the trunk and one or more car doors open.

In the meantime, Hardin drove defendant's truck to the store, with defendant in the front passenger seat and Jimmy Lambert, Antonio Locklear, and Daniel Logan in the rear. Defendant's automatic rifle was loaded and located in his truck between the driver and front passenger seats. As they entered the store's parking lot, defendant picked up the rifle and placed

5

it in his lap.[2] As Hardin drove through the lot and circled back near Bell's car, defendant fired 15-20 bullets at Bell and the Taylors. A bullet struck Bell in the top of his head and exited at the back of his head, rendering him immediately brain dead. The two Taylors remained at the scene. The group in defendant's truck drove to an acquaintance's home where defendant fired a shot from his rifle into the side of his truck to give the impression that Derrick Taylor or Bell had fired shots at defendant's truck; prior to that time, there were no bullet holes in defendant's truck. Defendant instructed Lambert, if questioned by the authorities, to say that Derrick Taylor and Bell had guns and they had begun shooting first.

Immediately after the shooting, local law enforcement began their investigation. Two individuals inside the convenience store reported to investigators that someone in Bell's car had a gun and that Derrick Taylor threw the gun into the woods after the shooting. No guns or other weapons or casings were found inside Bell's car. Multiple casings were found outside and around Bell's car, all coming from an automatic rifle. The Robeson County Sheriff's Department conducted a canine search of the wooded area in close proximity to where Bell's car was parked. The local EMS unit subsequently conducted a manual grid search of the same area. No gun, weapon, or casings were located during either of these searches. Gunshot residue tests performed on Derrick Taylor's and Marcus Bell's hands were negative. During laboratory testing, gunshot residue was observed on the back portion of the front passenger seat of Bell's car (the lower portion of which Bell's body was found hunched over); however, there was no evidence thereon of burned powder particles or lead vapor which would likely be present if a

---

[2]It is significant to note that defendant did not object to the factual statements in the PSR that defendant "placed a SKS assault rifle in the vehicle and covered it with a coat prior to leaving his residence" and that while traveling to the store, defendant "moved the rifle from beside him to between his legs." (PSR ¶ 4.)

firearm were discharged in close proximity to that seat.

In sum, the evidence establishes that defendant shot Bell without provocation and recklessly such that he was aware of a serious risk of death or serious bodily harm.

Defendant's and the government's objections to the presentence report are OVERRULED.³ The government's motion for upward departure is DENIED as MOOT.

This 1 December 2008.

                                            W. Earl Britt
                                            Senior U.S. District Judge

---

³The government's sole objection contends the cross reference should be to *first* degree murder. The court notes that even if the court applied that cross reference, the guideline range would be the same as the application of the second degree murder cross reference due to the impact of the statutory maximum.